[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner filed its seven count presentment of attorney for misconduct on December 10, 1993. The Respondent is charged with the following violations of the Rules of Professional Conduct: (1) two counts of failing to provide competent representation to a client; (2) one count of failing to abide by a client's decision concerning the withdrawal of a lawsuit; (3) five counts of failing to act with reasonable CT Page 1888 diligence and promptness in representing a client; (4) four counts of failing to commit a contingency fee to writing; and (5) two counts of acting improperly in the withdrawal of his representation of a client.
The underlying facts as set forth by the presentment were not disputed at the February 10, 1994 hearing before this court, nor does the Respondent contest that several of his clients were harmed. He relies heavily on the defense that most of his improper activities occurred during a time when he suffered from a psychiatric disorder diagnosed as Major Depression, single episode which is now in full remission. Peter M. Zeman, M.D., Senior Director of Forensic Consultation Service at the Institute of Living testified at the February 10, 1994 hearing. Dr. Zeman interviewed the Respondent on three separate occasions at the request of the court (Allen, J.) when the Respondent was placed on inactive status. (January 6, 1993). Dr. Zeman testified that the Respondent suffered from severe, major depression caused in part by his family situation and the pressures of working in the legislature and his law practice. His depression was mild commencing about October, 1989 but became severe from October 1991 until he obtained medical treatment.
The Respondent was admitted to the Institute of Living for four days in October, 1992 and has continued under the treatment of Howard G. Iger, M.D. As the result of this treatment and antidepressant medication, it is Dr. Zeman's opinion that the respondent is competent to return to the practice of law. The Respondent requests that he be reinstated at this time; the Petitioner argues that a further period of suspension is appropriate.
Some writers on the subject of lawyer discipline have recently suggested that a court should impose sanctions designed to deter others from transgression and to punish the wayward. This court agrees that deterrence is a proper goal but continues to believe that it is not the objective of the court in this proceeding to punish the respondent, but to preserve the courts "from the official administration of persons unfit to practice in them." Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 238.
Useful in the consideration of a proper remedy are the Standards for Imposing Lawyer Sanctions (hereinafter, CT Page 1889 "Standards") adopted by the American Bar Association in 1986 and amended in February, 1992. The Standards are published in the ABA/BNA Lawyers' Manual on Professional Conduct. Although the Standards have not been adopted in Connecticut, both sides in the present case used them in their presentations. Within the framework of the Standards it is helpful to consider the following: (1) What ethical duty did the lawyer violate? (a duty to a client, the public, the legal system, or the profession?; (2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly or negligently?); (3) What was the actual or potential injury caused by the lawyer's misconduct?" (Was there a serious or potentially serious injury?); and (4) Are there aggravating or mitigating circumstances?
In the present case the Respondent violated his ethical duty to clients, the public, the legal system and the profession.
In most instances the Respondent acted negligently, perhaps knowingly, but not intentionally. His depression made him incapable of keeping up with his obligations to his family and his two professions, the law and politics.
The Respondent's conduct caused serious, actual and potential injury to his clients.
There are both aggravating and mitigating circumstances. In the Petitioner's favor are his co-operation in having the examination by the court appointed physician and that he did not object to being placed on inactive status. Also, he had personal and emotional problems during the relevant times, he enjoyed a good reputation as an attorney and citizen, he has demonstrated remorse, his acts were largely negligent rather than intentional, and he did not have dishonest or selfish motives.
Aggravating factors are the two previous reprimands by the Statewide Grievance Committee, one in June of 1991 and another in December of 1992.
The Court has reviewed the extraordinary number and quality of the testimonial letters submitted on the Respondent's behalf. His difficulties arose from an attempt to do too much for too many. His political constituents and CT Page 1890 the citizens of Connecticut in general benefited from his legislative activities.
No matter how well intentioned or hard working the Respondent was, the Court cannot sanction the virtual abandonment of clients by an attorney. This not only harms individual clients but the public, the legal system and the legal profession.
The Respondent is accordingly suspended from the practice of law for a period of sixteen months commencing on January 6, 1993. On May 7, 1994 he may be reinstated without the need for further application or hearing.
Langenbach, J.